UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------X

PATRICK A. JOHNSON,

                *Plaintiff*,

  -against-                        **MEMORANDUM AND ORDER**
                                                  19-CV-5615 (KAM)

COMMISSIONER OF SOCIAL SECURITY,

                *Defendant*.

--------------------------------------X

**KIYO A. MATSUMOTO, United States District Judge:**

        Plaintiff Patrick A. Johnson ("plaintiff") appeals the final decision of the Commissioner of Social Security ("defendant"), which found plaintiff not disabled and thus not entitled to disability insurance benefits ("DIB") under sections 216(i) and 223(d) of the Social Security Act ("the Act"). Before the court are the parties' cross-motions for judgment on the pleadings. For the reasons set forth below, plaintiff's motion for judgment on the pleadings is GRANTED, the Commissioner's motion for judgment on the pleadings is respectfully DENIED, and this action is REMANDED for further proceedings consistent with this Memorandum and Order.

## BACKGROUND

        The factual and procedural background leading to this action is set forth in the administrative record.

(Administrative Transcript ("Tr."), ECF No. 18.)  The court has reviewed the parties' respective motions for judgment on the pleadings and the administrative record.  The parties entered into a joint stipulation of facts on July 2, 2020, detailing Mr. Johnson's medical history and Mr. Johnson's testimony at his administrative hearing, which the court hereby incorporates by reference.  (*See* Joint Stipulation of Facts ("Stip."), ECF No. 17.)

## I. Procedural History

Plaintiff filed an application for disability insurance benefits on February 24, 2014, alleging disability beginning January 10, 2000 due to dysthymic disorder, scoliosis, persistent depressive disorder, alcohol dependence, and bipolar disorder.  (Tr. 18, 192)[1].  Plaintiff's claim was denied on May 21, 2014.  (*Id*. 89-99).  On May 27, 2014, Mr. Johnson requested a hearing before an administrative law judge ("ALJ").  (*Id*. 107.)  On February 5, 2016, Johnson appeared with counsel and testified in person before ALJ Jeffrey Gardner ("ALJ Gardner").  (*Id*. 46-88.)  At the hearing, ALJ Gardner heard testimony by the plaintiff.  (*Id.*)

On October 19, 2016, ALJ Gardner issued a decision affirming the SSA's determination that Johnson did not qualify

---

[1] All citations are to the record pagination.

as disabled within the meaning of the Act and, as a result, was not entitled to benefits.  (*Id.* 6-22.)  On October 20, 2016 plaintiff appealed ALJ Gardner's decision to the Appeals Council.  (*Id.* 161-163.)  On June 20, 2017, the Appeals Council denied Johnson's appeal, rendering final the ALJ's decision. (*Id.* 1-5.)

On August 21, 2017, Johnson filed a civil action in the United States District Court for the Eastern District of New York.  (*Id.* 714-721.)  On January 9, 2018, the parties subsequently stipulated to a remand for further administrative proceedings.  (*Id.* 719-721.)

On May 7, 2018, the Appeals Council remanded the case to a new ALJ.  (*Id.* 732-738.)  On March 8, 2019, a second hearing was held before ALJ Lori Romeo.  (*Id.* 647-698.)  At the hearing, ALJ Romeo heard testimony by plaintiff, Dr. Chukwuemeka Efobi, a medical expert and board-certified psychiatrist, Darius Ghazi, an orthopedic medical expert, and Pat Green, a vocational expert.  (*Id.* 647.)  On May 9, 2019, ALJ Romeo issued a decision affirming the SSA's determination that Johnson did not qualify as disabled within the meaning of the Act and, as a result, was not entitled to benefits.  (*Id.* 620-646.)  On May 11, 2019, Johnson appealed ALJ Romeo's decision to the Appeals Council. (*Id.* 803-807.)  On August 5, 2019, the Appeals Council denied Johnson's request, making ALJ Romeo's decision the final

decision of the Commissioner.  (*Id.* 614-619.)  This action
followed.  (*See generally* Complaint ("Compl."), ECF No. 1.)

## STANDARD OF REVIEW

Unsuccessful claimants for disability benefits may
bring an action in federal court seeking judicial review of the
Commissioner's denial of their benefits. 42 U.S.C. §§ 405(g),
1383(c)(3). The reviewing court does not have the authority to
conduct a *de novo* review and may not substitute its own judgment
for that of the ALJ, even when it might have justifiably reached
a different result. *Cage v. Comm'r*, 692 F.3d 118, 122 (2d Cir.
2012). Rather, "'[a] district court may set aside the
Commissioner's determination that a claimant is not disabled
only if the factual findings are not supported by 'substantial
evidence' or if the decision is based on legal error.'" *Burgess
v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008) (quoting *Shaw v.
Chater*, 221 F.3d 126, 131 (2d Cir. 2000)).

Substantial evidence means 'more than a mere
scintilla. It means such relevant evidence as a reasonable mind
might accept as adequate to support a conclusion.'" *Id.* (quoting
*Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004)). If there
is substantial evidence in the record to support the
Commissioner's factual findings, those findings must be upheld.
42 U.S.C. § 405(g) ("The findings of the Commissioner of Social
Security as to any fact, if supported by substantial evidence,

shall be conclusive . . . .”). Inquiry into legal error requires the court to ask whether “‘the claimant has had a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the [Social Security] Act.’” *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)).

## DISCUSSION

### I. The Commissioner's Five-Step Analysis of Disability Claims

A claimant must be “disabled” within the meaning of the Act to receive disability benefits. *See* 42 U.S.C. §§ 423(a), (d). A claimant qualifies as disabled when she is unable to “engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.” *Id.* § 423(d)(1)(A); *Shaw*, 221 F.3d at 131–32. The impairment must be of “such severity” that the claimant is unable to do her previous work or engage in any other kind of substantial gainful work. 42 U.S.C. § 423(d)(2)(A).

The regulations promulgated by the Commissioner prescribe a five-step sequential evaluation process for determining whether a claimant meets the Act's definition of disabled. *See* 20 C.F.R. § 404.1520. The Commissioner's process is essentially as follows:

> [I]f the Commissioner determines (1) that the claimant is
> not working, (2) that [s]he has a 'severe impairment,' (3)
> that the impairment is not one [listed in Appendix 1 of the
> regulations] that conclusively requires a determination of
> disability, and (4) that the claimant is not capable of
> continuing in [her] prior type of work, the Commissioner
> must find [her] disabled if (5) there is not another type
> of work the claimant can do.

*Burgess*, 537 F.3d at 120 (quoting *Green-Younger v. Barnhart*, 335

F.3d 99, 106 (2d Cir. 2003)); *accord* 20 C.F.R. § 404.1520(a)(4).

"The claimant has the general burden of proving . . .

his or her case at steps one through four of the sequential

five-step framework established in the SSA regulations."

*Burgess*, 537 F.3d at 128 (internal quotation marks and citations

omitted). "However, [b]ecause a hearing on disability benefits

is a nonadversarial proceeding, the ALJ generally has an

affirmative obligation to develop the administrative record." *Id.*

(internal quotation marks omitted). "The burden falls upon the

Commissioner at the fifth step of the disability evaluation

process to prove that the claimant, if unable to perform her

past relevant work [and considering her residual functional

capacity, age, education, and work experience], is able to

engage in gainful employment within the national economy."

*Sobolewski v. Apfel*, 985 F. Supp. 300, 310 (E.D.N.Y. 1997).

"The Commissioner must consider the following in

determining a claimant's entitlement to benefits: '(1) the

objective medical facts [and clinical findings]; (2) diagnoses

or medical opinions based on such facts; (3) subjective evidence

of pain or disability . . . ; and (4) the claimant's educational

background, age, and work experience.'" *Balodis v. Leavitt*, 704

F. Supp. 2d 255, 262 (E.D.N.Y. 2001) (quoting *Brown v. Apfel*,

174 F.3d 59, 62 (2d Cir. 1999) (alterations in original)). If

the Commissioner finds a combination of impairments, the

Commissioner must also consider whether "the combined effect of

all of [a claimant's] impairment[s]" establish the claimant's

eligibility for Social Security benefits. 20 C.F.R. §

404.1523(c); *see also id.* § 416.945(a)(2).

## II. The ALJ's Application of the Five-Step Analysis

Using the five-step sequential process to determine

whether a claimant is disabled as mandated by the SSA

regulations, the ALJ made the following determinations.

At step one, the ALJ determined that plaintiff had not

engaged in substantial gainful activity since the application

date, February 24, 2014.  (Tr. 626.)[2]

At step two, the ALJ determined that plaintiff had the

severe impairments of scoliosis, unspecified schizophrenia,

depression, an "intellectual disorder vs. borderline

---

[2]     The ALJ noted that plaintiff had Social Security earnings of $1,080
posted for 2018 but that these earnings do not represent substantial gainful
activity as that term is defined in the Social Security Regulations.  (Tr.
626.)

7

intellectual functioning," and a history of marijuana and alcohol abuse. (*Id.* 627.)[3]

At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments of 20 C.F.R. Part 404, Subpart P, App'x 1. (*Id.*) Specifically, ALJ Romeo considered plaintiff's impairments under listing 1.00, musculoskeletal system, or a combination of musculoskeletal impairments that meets or medically equals the requirements of any listed impairment in Appendix 1, Subpart P of Regulations No. 4; listing 12.03, schizophrenia spectrum and other psychotic disorders; listing 12.04, depressive, bipolar and related disorders; listing 12.05, intellectual disorder; and listing 12.11, neurodevelopmental disorders. (*Id.* 627-628.) ALJ Romeo determined that Mr. Johnson did not meet listing 1.00 for musculoskeletal system impairments because the medical evidence indicated few positive findings of back pain on examination, including no radiographic evidence that would confirm a significant spinal disorder. (*Id.* 632-633.) In addition,

---

[3]     The ALJ noted that the medical evidence showed the plaintiff had a diagnosis of genital herpes but that this condition causes no significant functional limitations and is therefore not a "severe" impairment. (Tr. 627.) The ALJ noted that the medical evidence showed the claimant was diagnosed with Benign Prostatic Hyperplasia in September 2016 but that this condition causes no significant functional limitations and is not a "severe" impairment. (*Id.*) The ALJ noted that the medical evidence showed the claimant has pes planus (flat feet) but that this condition does not cause significant limitations and is not a "severe" impairment. (*Id.*)

plaintiff could ambulate effectively and was able to perform his
household chores and travel independently.  (*Id.*)  ALJ Romeo
determined that Mr. Johnson did not meet the listings for 12.03,
12.04, 12.05, and 12.11 for mental disorders because Mr. Johnson
did not have significant problems with attention, concentration
or memory, and had consistently been described as cooperative,
fully oriented and with normal cognitive abilities.  (*Id.* 636.)
The ALJ noted that Mr. Johnson on occasion had complained of
hallucinations, but that these were well controlled with
medication.  (*Id.*)

     The ALJ next concluded that plaintiff had the residual
functional capacity ("RFC") to perform light work.  (*Id.* 629.)
To this RFC, the ALJ added several exertional limitations,
including: frequently performing postural activities including
stair climbing, using ramps, balancing, kneeling, stooping,
crouching and crawling; frequently working at heights; and never
operating a motor vehicle because plaintiff did not have a
driver's license.  (*Id.*)  The ALJ also added several non-
exertional limitations, including: plaintiff was found to be
limited to simple routine and repetitive tasks; and could have
no more than occasional and casual contact with coworkers and no
contact with the public.  (*Id.*)

     In arriving at this RFC, the ALJ accorded varying
weight to the medical opinions, specifically: "great weight" to

the opinion of Dr. Darius Ghazi, M.D., an SSA non-examining
orthopedist medical expert; "some weight" to the opinion of Dr.
Julia Kaci, M.D., an SSA consultative examiner evaluating
plaintiff's physical impairments; "some weight" to the opinion
of Dr. Allen Meisel, M.D., an SSA consultative examiner
evaluating plaintiff's physical impairments; "little weight" to
the opinion of Dr. Reynaldo Budnah, D.O., one of plaintiff's
treating physicians for his physical impairments; "very little"
weight to the opinion of Dr. Jesireno Lumbab[4], M.D., one of
plaintiff's treating physicians for his physical impairments;
"little weight" to Dr. John Laurence Miller, Ph.D, an SSA non-
examining consultative psychologist evaluating plaintiff's
mental impairments; "little weight" to the opinion of Dr. Edward
Kamin, Ph.D, an SSA non-examining medical consultant examining
plaintiff's medical impairments; "little weight" to the opinion
of Dr. Stanley Baker, M.D., a treating psychiatrist evaluating
the plaintiff's mental impairments; "some weight" to the opinion
of Dr. Arshad Zaidi, M.D., who conducted a single examination of
the plaintiff's mental impairments; "some weight" to the opinion
of Dr. David Mahony, Ph.D, an SSA non-examining consultative
psychologist evaluating the plaintiff's mental impairments;
"some weight but not controlling weight or significant weight"

---

[4]     The ALJ mistakenly refers to the physician by his first name "Jesireno"
in her decision.  The court properly refers to the physician here and
throughout this opinion as Dr. Lumbab.  (*See also infra* n. 7.)

to the opinions of psychiatric nurse practitioner Deanna
Bronfermakher, N.P., a treating psychiatric nurse practitioner
and Dr. Jeanie Tse, M.D., who co-signed the opinions of NP
Bronfermakher; and the "most weight" to the opinion of Dr.
Chukwuemeka Efobi, M.D., an SSA non-examining medical consultant
evaluating the plaintiff's mental impairments.  (*Id.* 633-638.)
Further, upon assessing the medical evidence and opinions, the
ALJ found that plaintiff's medically determinable impairments
could reasonably be expected to cause some of his alleged
symptoms, but that plaintiff's "statements concerning the
intensity, persistence, and limiting effects of these symptoms
[were] not entirely consistent" with the evidence.  (*Id.* 629.)

     At step four, the ALJ determined that plaintiff did
not perform past work that represented substantial gainful
activity in the last fifteen years.  (*Id.* 638.)  The ALJ
therefore determined plaintiff had no past relevant work to
consider.  (*Id.*)

     At step five, the ALJ concluded that given plaintiff's
age, education, work experience, and RFC, jobs existed in
significant numbers in the national economy that plaintiff could
perform.  (*Id.*)  The ALJ supplied the vocational expert with the
above information, who determined that plaintiff could perform
the requirements of representative occupations like hand
packager, final assembler, or garment sorter.  (*Id.* 639.)  The

ALJ thus concluded that plaintiff was not disabled within the meaning of the Act. (*Id.* 639-640.)

### III. The ALJ Erred in Failing to Apply the Treating Physician Rule to the Opinions of Dr. Baker, NP Bronfermakher as co-signed by Dr. Tse, Dr. Lumbab, and Dr. Budnah

"[A]n ALJ should defer to 'to the views of the physician who has engaged in the primary treatment of the claimant.'" *Cichocki v. Astrue*, 534 F. App'x 71, 74 (2d Cir. 2013) (quoting *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003)).[5] "However, '[a] treating physician's statement that the claimant is disabled cannot itself be determinative.'" *Id.* (quoting *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999)). "Rather, 'a treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s)' will be given 'controlling weight' if the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record.'" *Id.* (quoting 20 C.F.R. § 404.1527(c)(2)).

---

[5]    The Commissioner has revised its rules to eliminate the treating physician rule, and ALJs are now to weigh all medical evaluations, regardless of their sources, based on how well supported they are and their consistency with the remainder of the record. *See* 20 C.F.R. §§ 404.1520b; 416.920c. Claims filed before March 27, 2017, however, are still subject to the treating physician rule, *see id.* § 404.1527(c)(2), and the Court accordingly applies the rule to this case, as plaintiff filed his claim on February 24, 2014. *See, e.g., Conetta v. Berryhill*, 365 F. Supp. 3d 383, 395 n.5 (S.D.N.Y. 2019).

"An 'ALJ who refuses to accord controlling weight to the medical opinion of a treating physician must consider various factors to determine how much weight to give to the opinion,' including: '(i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.'" *Id.* (quoting *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004)). "The ALJ must then 'comprehensively set forth his [or her] reasons for the weight assigned to a treating physician's opinion.'" *Id.* (quoting *Burgess*, 537 F.3d at 129).

In this analysis, although an ALJ should generally explain the weight given to each opinion, remand is not required where application of the proper legal standards would lead to the same conclusion previously reached. *See Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010). Failure to consider the opinion of a treating physician "ordinarily requires remand to the ALJ for consideration of the improperly excluded evidence, at least where the unconsidered evidence is significantly more favorable to the claimant than the evidence considered." *Id.* at 409. "Remand is unnecessary, however, '[w]here application of

the correct legal standard could lead to only one conclusion.'" *Id.* (quoting *Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998)). For instance, in *Zabala*, the court found it was harmless error to "exclude[] evidence [that was] essentially duplicative of evidence considered by the ALJ," as there would be no reasonable likelihood that consideration of the unconsidered report would change the outcome. *Id.* at 409-10 (noting that "[t]he [unconsidered] report [was] largely identical to a [different] report by the same doctor, which the ALJ did consider," and which set forth substantially identical findings).

The Commissioner argues that the ALJ gave proper weight to the medical sources and that the ALJ's decision is supported by substantial evidence.  (*See* Def. Mem. in Support of Def.'s Cross-Mot. for J. on the Pleadings ("Def. Mem.") at 6-16, ECF No. 16.)  Plaintiff contends that the ALJ failed to properly apply the treating physician rule to the opinions of Dr. Baker, NP Bronfermakher as co-signed by Dr. Tse, Dr. Lumbab, and Dr. Budnah.  (Pl. Mem. in Support of Pl.'s Mot. for J. on the Pleadings ("Pl. Mem.") at 2-9, ECF No. 15.)

"The opinion of a treating physician on the nature or severity of a claimant's impairments is binding if it is supported by medical evidence and not contradicted by substantial evidence in the record." *Selian v. Astrue,* 708 F.3d 409, 418 (2d Cir. 2013) (citing *Burgess v. Astrue,* 537 F.3d 117,

128 (2d Cir. 2008); *Green-Younger v. Barnhart,* 335 F.3d 99, 106–
07 (2d Cir. 2003)).  "SSA regulations provide a very specific
process for evaluating a treating physician's opinion and
instruct ALJs to give such opinions 'controlling weight' in all
but a limited range of circumstances." *Greek v. Colvin,* 802 F.3d
370, 376 (2d Cir. 2015) (internal citations omitted).  Each of
the *Burgess* factors ALJ Romeo was required to consider militate
in favor of affording the opinions of Dr. Baker, NP
Bronfermakher as co-signed by Dr. Tse, Dr. Lumbab, and Dr.
Budnah greater weight than ALJ Romeo afforded.  As a group, the
doctors are certified specialists who had ongoing treatment
relationships with the plaintiff, and provided consistent, well-
supported, medical evidence for their opinions.  ALJ Romeo only
afforded "very little" weight to Dr. Lumbab, "little weight" to
Drs. Budnah and Baker, and "some weight" to Dr. Tse and NP
Bronfermakher, rather than affording any or all of them
"controlling weight," because ALJ Romeo concluded that: (1) the
opinions of Drs. Lumbab and Budnah were not well-supported by
the treatment records; and (2) that the opinions of Dr. Baker
and of NP Bronfermakher as co-signed by Dr. Tse were unexplained
and unsupported by mental status exam findings, as well as
internally inconsistent.  (Tr. 633-638.)  The ALJ procedurally
erred when she failed to explicitly consider the *Burgess* factors
while determining what weight to afford the opinions and medical

evidence from plaintiff's treating physicians.  *See Estrella*,
925 F.3d at 96.  "Because the ALJ procedurally erred, the
question becomes whether a searching review of the record ...
assures the court...that the substance of the...rule was not
traversed—*i.e.*, whether the record otherwise provides 'good
reasons' for assigning '[some] weight' to [the treating
physicians'] opinion[s]." *See id.* (ellipsis in original) (citing
*Halloran*, 362 F.3d at 32).

Based on the following review of the record, the court
finds that ALJ Romeo's conclusions that plaintiff's treating
physicians' opinions were either (1) not well-supported by
treatment records or (2) were unexplained and unsupported by
mental status exam findings, as well as internally inconsistent,
were based on the ALJ's factually deficient reading of the
record.  Pursuant to the following analysis, the court remands
and directs ALJ Romeo to explicitly consider the *Burgess* factors
and explain whether she affords controlling weight to the
opinions of plaintiff's treating physicians, Dr. Baker, NP
Bronfermakher as co-signed by Dr. Tse, Dr. Lumbab, and Dr.
Budnah.

### A. Dr. Baker's Opinion

ALJ Romeo erred in according only "little weight,"
rather than "controlling weight," to claimant's treating
physician, Dr. Baker, when ALJ Romeo erroneously concluded that:

(1) Dr. Baker's opinion was unexplained and unsupported by mental status exam findings and (2) internally inconsistent.

First, the court reviews Dr. Baker's findings to determine whether they are unexplained and unsupported by mental status exam findings.  Dr. Baker opined, among other things, that plaintiff had dysthymic/persistent depressive disorder, alcohol dependence, and abused cannabis, and recommended individual therapy, group therapy, and medication management. (Tr. 267-268.)  Dr. Baker also completed form prompts regarding plaintiff's conditions including: a diagnosis of dysthymic/persistent depressive disorder, alcohol dependence, and cannabis abuse; a GAF score of 51-60; signs and symptoms included appetite disturbance with weight change, sleep disturbance, personality change, mood disturbance, emotional lability, recurrent panic attacks, paranoia or inappropriate suspiciousness, feelings of guilt/worthlessness, difficulty thinking or concentrating, social withdrawal or isolation, intrusive recollections of traumatic experience, generalized persistent anxiety, hostility and irritability.  (*Id.* 308-311.)

Over the course of an eight-month period from January of 2014 to August of 2014, Dr. Baker evaluated plaintiff's mental status four separate times, noting plaintiff's descriptions of flashbacks of his dead brother occurring since 1987, and depressive episodes.  (Stip. 3-5.)  After a mental

17

status examination revealed "fair" psychomotor movements, pleasant mood, a labile affect, sporadic nightmares, fair memory, fair attention and concentration, and fair insight and judgment, Dr. Baker diagnosed dysthymic/persistent depressive disorder, alcohol dependence, and cannabis abuse, and recommended individual therapy and medication management. (Stip. 3.)  After meeting with the plaintiff two more times, Dr. Baker checked the form prompt that plaintiff had an "extreme loss" of functioning in his ability to accept instructions and respond appropriately to criticism from supervisors, *id.* 4; Dr. Baker checked prompts that plaintiff had a "marked loss" of functioning and could sustain performance only "up to 1/3 of an 8-hour workday" in his ability to (1) interact appropriately with the public and (2) get along with co-workers and peers without unduly distracting them or exhibiting behavioral extremes, *id.* 4-5; Dr. Baker checked form prompts that plaintiff had no limitations in areas including asking simple questions and requesting assistance, traveling in unfamiliar places, or using public transportation, *id.* 5; Dr. Baker estimated plaintiff would miss work, on average, more than three times a month due to his impairments or treatment.  (*Id.* 5.)  ALJ Romeo concluded that Dr. Baker's statement about the plaintiff missing work more than three times a month was unexplained, *see* Tr. 627, but contrary to ALJ Romeo's conclusion, the record demonstrates

18

that Dr. Baker did support this statement.  (*See* Tr. 309.)  With

respect to mental status examination findings, Dr. Baker wrote

that plaintiff had a diagnosis of persistent depressive disorder

with mood swings, irritability, sadness, isolation, anxiety, and

anhedonia and Dr. Baker checked the form prompt that Mr.

Johnson's "impairments [are] reasonably consistent with the

symptoms and functional limitations described in this

evaluation."  (Stip. 5.)  On August 19, 2014, plaintiff had his

fourth evaluation with Dr. Baker whose mental status findings[6]

indicate plaintiff had a labile affect, auditory hallucinations

of people calling his name, fair memory, fair

attention/concentration, and fair insight/judgment, and Dr.

Baker diagnosed bipolar disorder, ruled-out post-traumatic

stress disorder ("PTSD"), and alcohol dependence disorder, in

partial remission, while plaintiff's GAF score was 51-60.  (*Id.*)

Based on the foregoing review of Dr. Baker's findings, the court

finds that Dr. Baker's findings were supported by his mental

status exam findings.  Consequently, the court finds that Dr.

Baker's treatment of plaintiff over the eight-month period was

explained and supported by mental status exam findings.

Second, ALJ Romeo mischaracterized the evidence in

arriving at the conclusion that Dr. Baker's opinion was

---

[6]     The handwritten note in the record is partially illegible.

internally inconsistent.  To support this finding, the ALJ cited
Dr. Baker's conclusions that plaintiff could take public
transportation and has only moderate problems with social
functioning, yet also concluded that he would have marked
problems with the public and coworkers.  (Tr. 637.)  ALJ Romeo
further explained that Dr. Baker's finding is not consistent
with the objective evidence that plaintiff was cooperative at
examinations, attended group therapy sessions successfully, had
adequate grooming, enjoys going to the park, and can interact
acceptably with others when performing activities of daily
living.  (*Id.*)  Contrary to the ALJ's conclusion, the record
demonstrates that plaintiff is limited in his ability to perform
daily activities.  Though plaintiff has demonstrated abilities
to do household chores, perform personal care, and take public
transportation, performance of such limited activities is not
indicative of an ability to perform sustained work.  "[A]
finding that a claimant is capable of undertaking basic
activities of daily life cannot stand in for a determination of
whether that person is capable of maintaining employment, at
least where there is no evidence that the claimant 'engaged in
any of these activities for sustained periods comparable to
those required to hold a sedentary job.'" *Bigler v. Comm'r of
Soc. Sec.,* No. 19-CV-03568 (AMD), 2020 WL 5819901, at *5
(E.D.N.Y. Sept. 29, 2020) (quoting *Vasquez v. Barnhart,* No. 02-

CV-6751, 2004 WL 725322, at *11 (E.D.N.Y. Mar. 2, 2004).  *See also Murdaugh v. Sec'y of Dep't of Health & Human Servs.*, 837 F.2d 99, 102 (2d Cir. 1988) ("[T]hat appellant receives conservative treatment, waters his landlady's garden, occasionally visits friends and is able to get on and off an examination table is scarcely said to controvert the medical evidence."); *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 643 (2d Cir. 1983).  Dr. Baker's opinion is based on sound medical evidence collected over several evaluations conducted over an eight-month period; during that time, plaintiff was consistently depressed, and experienced some improvement in symptoms but, overall, plaintiff's symptoms persisted.  (*See* Stip. 3-5.)

Non-examining physician Dr. Efobi's testified, after reviewing the medical record, that plaintiff would be capable of simple work and capable of performing occasional interactions. Dr. Efobi's conclusory testimony is not sufficient medical evidence to discount Dr. Baker's well-informed opinion.  "ALJs should not rely heavily on the findings of consultative physicians after a single examination."  *Selian v. Astrue*, 708 F.3d 409, 419 (2d Cir. 2013).  Here, Dr. Efobi merely reviewed records but did not examine plaintiff.  An inconsistency between the opinion of a treating physician and that of a consultative examiner "is not sufficient, on its own, to reject the opinion

of the treating physician." *Cammy v. Colvin*, No. 12-CV-5810, 2015 WL 6029187, at *14 (E.D.N.Y. Oct. 15, 2015) (quoting *Donnelly v. Comm'r of Soc. Sec.*, 49 F. Supp. 3d 289, 305 (E.D.N.Y. 2014)).  Indeed, there were discrete moments over the course of Dr. Baker's treating relationships where he reported that plaintiff had the ability to occasionally interact socially, *see, e.g.,* Tr. 310, similar to the one-off testimony of SSA non-examining medical consultant Dr. Efobi.  Such findings, however, must be evaluated in the context of the other significant deficits and impairments Dr. Baker found over his eight-month treatment period, which Dr. Efobi's one-time record review could not be expected to replicate.

Accordingly, for the reasons stated above, the court finds that Dr. Baker's opinion was well-supported and explained by multiple mental status exam findings and was not internally inconsistent. On remand, the ALJ is directed to explicitly consider the *Burgess* factors and either afford controlling weight to Dr. Baker's opinion or explain why she will not do so.

### B. Dr. Tse and NP Bronfermakher

As with Dr. Baker, ALJ Romeo erred in according only "some weight," rather than "controlling weight," to claimant's next treating physician, Dr. Tse and NP Bronfermakher, when ALJ Romeo erroneously concluded that: (1) Dr. Tse's and NP Bronfermakher's opinion was unexplained and unsupported by

mental status exam findings; and that (2) Dr. Tse's and NP
Bronfermakher's opinion was internally inconsistent.

First, the court reviews Dr. Tse's and NP
Bronfermakher's findings to determine whether they are
unexplained and unsupported by mental status exam findings.  NP
Bronfermakher's findings, co-signed by Dr. Tse, regarding
plaintiff's limitations were largely consistent with those of
Dr. Baker.  *See supra*.  NP Bronfermakher and Dr. Tse filled out
a report which included: a diagnosis of schizoaffective
disorder; and signs and symptoms of appetite disturbance with
weight change, sleep disturbance, mood disturbance, emotional
lability, paranoia or inappropriate suspiciousness, decreased
energy, and intrusive recollections of a traumatic experience.
(Stip. 9.)  With respect to mental status examination findings,
NP Bronfermakher wrote that plaintiff was calm and cooperative
during the interview, had good eye contact, had no psychomotor
abnormalities, reported a fair mood, had a blunted affect,
denied hallucinations, denied suicidal or homicidal ideation,
and had fair insight and judgment and checked the form prompt
that plaintiff's "impairments are reasonably consistent with the
symptoms and functional limitations described in this
valuation."  (*Id.*)  Further NP Bronfermakher and Dr. Tse opined
that plaintiff had a "marked loss" of functioning in his ability
and could sustain performance only up to 1/3 of an 8-hour

workday, *id.* 10;  he had a "moderate loss" of functioning and
only had the ability to perform the activity for 1/3 to 2/3 of
an 8-hour workday in his ability to maintain attention and
concentration for extended periods, *i.e.*, 2 hour segments;
maintain regular attendance and be punctual; deal with the
stress of semi-skilled and skilled work; work in coordination
with or proximity to others without being unduly distracted; get
along with co-workers or peers without unduly distracting them
or exhibiting behavioral extremes; and, respond appropriately to
changes in a routine work setting, *id.*; that on average Mr.
Johnson would miss work more than three times a month due to his
impairments or treatment, *id.*; that he had no significant
limitations with respect to simple or detailed instructions,
sustaining an ordinary routine, making simple decisions,
interacting appropriately with the public, accepting
instructions and responding appropriately to criticism from
supervisors, and maintaining socially appropriate behavior.
(*Id.*)

        NP Bronfermakher and Dr. Tse based their opinions on
sound medical evidence obtained from their evaluations of the
plaintiff.  NP Bronfermakher and Dr. Tse based their opinions on
evidence of appetite disturbance with weight change, sleep
disturbance, mood disturbance, emotional lability, paranoia or
inappropriate suspiciousness, decreased energy, and intrusive

recollections of a traumatic experience.  (*Id.* 9.)  Some mental status exam findings from the Personalized Recovery Oriented Services ("PROS") performed by NP Bronfermakher and Dr. Tse showed a blunted affect, "depressed" mood, vague referential and grandiose themes of thought content, and occasional auditory hallucinations.  (*Id.* 6-9.)  Like Dr. Baker, NP Bronfermakher and Dr. Tse based their opinions on sound medical evidence and mental status exam findings.

    Second, ALJ Romeo mischaracterized evidence in arriving at the conclusion that NP Bronfermakher and Dr. Tse's opinion was internally inconsistent.  To support this finding, the ALJ cited NP Bronfermakher's and Dr. Tse's conclusions that, in September 2015, they completed an assessment stating that plaintiff was employable with extra orientation and then, in January 2016, they completed an assessment stating that the plaintiff could not complete a full day of work at a consistent pace.  (Tr. 637-38.)  ALJ Romeo concluded that NP Bronfermakher and Dr. Tse provided no evidence to support the limitations found in January 2016.  (*Id.*)  Although NP Bronfermakher and Dr. Tse reported in September 2015 that plaintiff was employable with limitations, contrary to the ALJ's conclusion, NP Bronfermakher and Dr. Tse supported their subsequent January 2016 contrary conclusion that plaintiff could not complete a full day of work or perform at a consistent pace with the

following findings:  NP Bronfermakher and Dr. Tse reported
evidence of plaintiff suffering from appetite disturbance with
weight change, sleep disturbance, mood disturbance, emotional
lability, paranoia or inappropriate suspiciousness, decreased
energy, and intrusive recollections of a traumatic experience in
conjunction with their January 2016 opinion that plaintiff could
not complete a full day of work or perform at a consistent pace.
(Stip. 9.)  ALJ Romeo again referred to plaintiff's ability to
perform limited daily activities but, as the court determined
earlier, *supra*, although a plaintiff has demonstrated abilities
to perform basic functions of daily living, performance of such
limited activities is not indicative of an ability to perform
sustained work.  *See* Dr. Baker, *supra.*  Further, the ALJ failed
to sufficiently explain why a finding that plaintiff could do
simple work from Dr. Efobi, a non-examining medical consultant,
is sufficient to discount the findings of the treating
physicians' opinions.  Like Dr. Baker, NP Bronfermakher and Dr.
Tse reported that plaintiff had significant impairments that
supported their opinion regarding plaintiff's limitations, based
on their longitudinal treatment records.

Accordingly, for the reasons stated above, the court
finds that NP Bronfermakher's and Dr. Tse's opinion was well-
supported and explained by mental status exam findings and was
not internally inconsistent. On remand, the ALJ is directed to

explicitly consider the *Burgess* factors and either afford

controlling weight to NP Bronfermakher's and Dr. Tse's opinion

or explain why she will not do so.

### C. Dr. Lumbab's[7] Opinion

ALJ Romeo erred in according only "very little

weight," rather than "controlling weight" to claimant's treating

physician, Dr. Lumbab, when ALJ Romeo erroneously concluded

that: (1) Dr. Lumbab's opinion was not supported by objective

medical evidence and (2) contradicted by his own statements and

plaintiff's ability to do household chores.

First, the court reviews Dr. Lumbab's findings to

determine whether they are supported by objective medical

evidence.  Dr. Lumbab diagnosed chronic lower back pain and

depression and further opined that plaintiff: could sit less

than 1 hour in an 8-hour workday and for less than 15 minutes at

one time; could stand/walk 2 hours total in an 8-hour workday

and for 30 minutes at a time; needed to lie down 4 hours a day;

could never lift/carry even 5 pounds; and would miss work more

than three times a month due to his impairments.  (Stip. 16.)

Further, Dr. Lumbab checked form prompts opining that plaintiff

had: positive objective signs of reduced motion in the lower

back; impaired sleep; impaired appetite; tenderness; muscle

---

[7]     The ALJ mistakenly refers to the physician by his first name "Jesireno" in her decision.  The court properly refers to the physician here and throughout this opinion as Dr. Lumbab.  (*See also supra* n. 4.)

spasms and muscle weakness; anxiety and depression worsened plaintiff's perception of pain; and side effects from medication of possible dizziness and drowsiness.  (*Id.*)

The ALJ's conclusion that Dr. Lumbab's opinions were not supported by objective medical evidence because the treatment records from Brownsville Community Development Corporation ("BCDC") do not show muscle weakness is unpersuasive.  (*See* Tr. 633, referring to *id.* 15-19.)  ALJ Romeo stated that the BCDC record shows no muscle weakness but fails to note that the BCDC record contains findings of tenderness on palpation of the lumbar spine from L2 through L5, tight bilateral paravertebral muscles, and decreased flexion and extension of the spine.  (Stip. 18.)  ALJ Romeo also stated the medical evidence shows no weakness of the upper extremities or grip, and no difficulties in handling/fingering objects.  (Tr. 633.)  The ALJ's summary conclusion, however, fails to address why such a finding is relevant to or undercuts Dr. Lumbab's opinion.  The fact that the medical record does not show weakness of the upper extremities or grip, and no difficulties in handling/fingering objects, fails to support ALJ Romeo's lay conclusion that these isolated facts undermine Dr. Lumbab's extensive findings.  Dr. Lumbab based his opinions on findings of reduced motion in the back, impaired sleep, impaired appetite, tenderness, and muscle spasms.  (Tr. 365.)  These

28

findings were confirmed by physical examinations in treatment
notes.  (Tr. 430, 434, 437, 454, 459.)  The ALJ is "not
permitted to substitute [her] own expertise or view of the
medical proof for the treating physician's opinion or for any
competent medical opinion." *Greek v. Colvin,* 802 F.3d 370, 375
(2d Cir. 2015).  Here the ALJ impermissibly substituted her own
opinions for Dr. Lumbab's medical findings and opinion.  The
court finds that the ALJ was in error and that Dr. Lumbab based
his opinions on objective medical findings and physical
examinations.

Second, ALJ Romeo mischaracterized the evidence in
arriving at the conclusion that Dr. Lumbab's opinion was
contradicted by the doctor's own statements and plaintiff's
ability to do household chores.  To support this finding, ALJ
Romeo cited plaintiff's ability to do household chores and Dr.
Lumbab's statements regarding these abilities.  (Tr. 633.)
There is no specific reference to what abilities and chores the
ALJ was referring to.  Plaintiff has demonstrated limited
abilities to perform basic activities, and Dr. Lumbab issued a
note stating that plaintiff "should be excused from work for one
day" and "could return to school on June 10."  (*See* Stip. 16.)
Although these statements were issued by Dr. Lumbab, as
discussed above *supra*, the evidence that a claimant is capable
of performing basic activities of daily life cannot stand in

place of a determination for whether the claimant can maintain employment. *See Bigler*, 2020 WL 5819901, at *5 (E.D.N.Y. Sept. 29, 2020). Further, such findings must be evaluated in the context of the other significant impairments Dr. Lumbab found while examining and treating the plaintiff.

Accordingly, for the reasons stated above, the court finds that Dr. Lumbab's opinion was well-supported by objective medical evidence and was not contradicted by his own statements and plaintiff's ability to do household chores. On remand, the ALJ is directed to explicitly consider the *Burgess* factors and either afford controlling weight to Dr. Lumbab's opinion or explain why she will not do so.

### D. Dr. Budnah's Opinion

ALJ Romeo erred in according only "little weight," rather than "controlling weight" to claimant's treating physician, Dr. Budnah, when ALJ Romeo erroneously concluded that: (1) Dr. Budnah's opinion was not supported by objective medical evidence and (2) the length of his treatment history was too short.

First, the court reviews Dr. Budnah's findings to determine whether they are supported by objective medical evidence. Dr. Budnah's physical examination revealed tenderness on palpation of the lumbar spine from L2 through L5, tight bilateral paravertebral muscles, and decreased flexion and

extension of the spine.  (Tr. 434.)  Dr. Budnah examined

plaintiff on two occasions.  (Tr. 365.)  Dr. Budnah diagnosed

chronic lower back pain and described plaintiff's symptom as

"low back pain radiating to the left leg." (Stip. 18.)  Dr.

Budnah further opined the following findings: plaintiff was able

to sit less than 1 hour in an 8-hour workday and stand/walk less

than 1 hour in and 8-hour workday; plaintiff needed to lie down

3 hours a day; and plaintiff would miss work more than three

times a month due to his impairments or treatment.  (*Id.*)  Dr.

Budnah also filled out form prompts that included the following:

plaintiff had "positive objective signs" of reduced range of

motion; impaired sleep; impaired appetite; abnormal posture;

swelling; muscle weakness; and emotional factors contributing to

plaintiff's symptoms but did not indicate that plaintiff had any

psychological conditions.  (*Id.*)

        Similar to Dr. Lumbab, the court finds unpersuasive

the ALJ's reasons for concluding that Dr. Budnah's opinions were

unsupported by objective medical evidence in the treatment

records from the BCDC, because those records do not show muscle

weakness or abnormal posture.  (*See* Tr. 633, referring to *id.*

15-19.)  ALJ Romeo stated that the BCDC record shows no muscle

weakness but fails to mention the BCDC record contains evidence

that on examination of plaintiff, Dr. Budnah found tenderness on

palpation of the lumbar spine from L2 through L5, tight

31

bilateral paravertebral muscles, and decreased flexion and
extension of the spine.  (Stip. 18.)  Similar to the court's
analysis of Dr. Lumbab's opinions, the ALJ also substituted her
lay interpretation of the record to support her weighing of Dr.
Budnah's opinion.  Again, the ALJ is "not permitted to
substitute [her] own expertise or view of the medical proof for
the treating physician's opinion or for any competent medical
opinion." *Colvin,* 802 F.3d at *375.  Dr. Budnah based his
opinions on sound conclusions supported by objective medical
findings and physical examinations.

Second, ALJ Romeo mischaracterized the evidence in
arriving at the conclusion that Dr. Budnah's opinion could be
discounted because he only saw the plaintiff on two occasions.
(Tr. 633.)  The frequency of examination and the length, nature
and extent of the treatment relationship, is just one of several
factors the ALJ must consider when refusing to give controlling
weight to the medical opinion of a treating physician.  *Halloran
v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004).  In addition to
being treated by Dr. Budnah two times while at the BCDC,
plaintiff was also treated by Dr. Lumbab, who opined similarly
to Dr. Budnah, as well as being treated by multiple other
sources at the BCDC regularly from September 2012 to September
2016.  (Stip. 15-19.)  By cherry-picking evidence that supports
the ALJ's lay view of plaintiff's condition, and in failing to

afford the treating physician Dr. Budnah's opinion controlling weight, the ALJ has inappropriately substituted her lay opinion for a treating physician's medical opinion. *See Colvin,* 802 F.3d, at *375.

As the ALJ failed to accurately characterize or cite with particularity any evidence that contradicted Dr. Budnah's opinion, and because the ALJ failed to explicitly consider the *Burgess* factors, the court finds that Dr. Budnah's opinion should have been afforded controlling weight, or an explanation should be provided for not doing so.  On remand, the ALJ is directed to explicitly consider the *Burgess* factors, consider whether to assign controlling weight to Dr. Budnah's opinion, and explain the bases for deciding whether or not to do so.

On balance, the ALJ selectively relied on inconsistencies in the treating physicians' opinions as a basis for denying plaintiff disability benefits.  This was in violation of the ALJ's mandate, and, along with the errors noted above *supra*, warrants remand.  *See Clarke v. Colvin*, 15-CV-354, 2017 WL 125362, at *9 (S.D.N.Y. Apr. 3, 2017) ("[T]he ALJ selectively relied on evidence that weighed against a finding of a disability.  This is improper—an ALJ may not 'pick and choose evidence which favors a finding that the claimant is not disabled.'") (quoting *Rodriguez v. Astrue*, 07-CV- 534, 2009 WL 637154, at *25 (S.D.N.Y. Mar. 9, 2009)); *accord Kebreau v.*

*Astrue*, No. 11-CV-12, 2012 WL 3597377, at *2 (E.D.N.Y. Aug. 20, 2012).

**IV.   The ALJ Erred in Assessing Plaintiff's Credibility**

An ALJ evaluating a claimant's subjective complaints of his symptoms must first decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce his pain or other symptoms alleged.   20 C.F.R. § 404.1529(c)(1).   Second, the ALJ must evaluate the intensity and persistence of the claimant's symptoms given all of the available evidence.   *Id.*   In assessing the credibility of the claimant's statements regarding his symptoms, the ALJ must consider the following factors: "(1) [The claimant's] daily activities; (2) The location, duration, frequency, and intensity of [the claimant's] pain or other symptoms; (3) Precipitating and aggravating factors; (4) The type, dosage, effectiveness, and side effects of any medication [the claimant] takes or has taken to alleviate pain or other symptoms; (5) Treatment, other than medication, [the claimant] receives or has received for relief of pain or other symptoms; (6) Any measures the claimant uses or [has] used to relieve pain or other symptoms (e.g., lying flat on [her] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (7) Other factors concerning [the claimant's] functional limitations and restrictions due to pain or other symptoms."   20 C.F.R. §

34

404.1529(c)(3).  Notwithstanding, the ALJ will consider whether there are any incongruities between the claimant's statements and the rest of the evidence.  20 C.F.R. § 404.1529(c)(4). "Remand is appropriate where an ALJ does not follow these steps." *Peck v. Astrue*, No. 07-CV-2762, 2010 WL 3125950, at *4 (E.D.N.Y. Aug. 6, 2010).

The ALJ initially found that plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms.  (Tr. 629.)  The ALJ then cherry-picked favorable findings by finding that plaintiff's subjective account of the intensity, persistence, and limiting effects of his symptoms were incongruent with the objective medical evidence and other evidence, including: Dr. Ghazi's testimony that plaintiff has no limitations for sitting, standing, or walking and is able to carry objects weighing up to 20 pounds occasionally, *id.* 632; the absence of "radiographic evidence" in the record, *id.* 632; that plaintiff has not been prescribed "particularly strong medication since April 2014," *id.* 633; Dr. Efobi's testimony that plaintiff is able to perform "simple tasks" involving "no public contact and occasional and casual contact with supervisors and coworkers," *id.* 636; mental status exam findings in the record showing that, "for the most part," plaintiff does not have significant problems with "attention, concentration, or memory," *id.* 636; and the fact that plaintiff

had been able to engage in some activities of daily living. (*Id.* 633, 637.)

As explained above, the ALJ's evaluation of the credibility of plaintiff's statements was based on an incorrect weighing of plaintiff's treating physicians' medical opinions. Thus, on remand, the ALJ is instructed to reevaluate plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms in light of the ALJ's careful reassessment of the medical opinion evidence and the underlying medical evidence. *See Ingrassia v. Colvin*, 239 F. Supp. 3d 605, 628 (E.D.N.Y. 2017) ("[The ALJ's credibility determination] was further flawed because the ALJ did not give controlling weight to Dr. Alpert's medical opinion, and '[t]he ALJ's proper evaluation of [the treating physician's] opinions [will] necessarily impact the ALJ's credibility analysis'") (internal citations and quotations omitted); *Goff v. Astrue*, 993 F. Supp. 2d 114, 125 (N.D.N.Y. 2012) ("The ALJ's decision to discount Plaintiff's credibility with respect to her respiratory impairments was based in necessary part upon his assessment of Dr. LoDolce's opinion.  []  However, the ALJ's consideration of Dr. LoDolce's opinion was flawed for the reasons stated above. As such, the question of Plaintiff's credibility as to her physical limitations will need to be revisited on remand after the ALJ reassesses Dr. LoDolce's opinion.")

## V.    Request for New Administrative Law Judge

Plaintiff requests that, if the court remands the case, the court also order the Commissioner to assign a new ALJ to the case.  (Pl. Mem. 13.)   In determining whether there is sufficient reason for remand to a different ALJ, the court will consider the following factors: (1) there is a clear indication that the ALJ will not apply the appropriate legal standards on remand; (2) there is a clear manifested bias or hostility toward any party; (3) there is a clear refusal to weigh or consider portions of the evidence or testimony favorable to a party due to apparent hostility to that party; (4) there is a refusal to weight or consider evidence with impartiality, due to apparent hostility to any party.  *Brown v. Astrue*, No. 08-CV-3653 (DGT), 2010 WL 2606477, at *9 (E.D.N.Y. June 22, 2010) (quoting *Sutherland v. Barnhart*, 322 F. Supp. 2d 282, 292 (E.D.N.Y. 2004)); (*Valet v. Astrue*, No. 10-CV-3282, 2012 WL 194970, at *22-23 (E.D.N.Y. Jan. 23, 2012).  The court has held that remand to a new ALJ is appropriate only when an ALJ's conduct brings about serious concerns about the fundamental fairness of the disability review process.  (*Id.*)

Applying the above factors, ALJ Romeo did not err in her remarks during the 2019 hearing with regard to a dialogue over evidence for submission at the remand hearing.  The ALJ suggested to plaintiff he "take whatever action he needs

necessary against [his attorney's] law firm" because the medical record was incomplete at the time of the 2019 hearing.  (Tr. 656.)  Plaintiff's attorney stated the medical record was incomplete because plaintiff would not cooperate with completing the necessary medical release forms to obtain the records. (Tr. 653-657.)  Plaintiff's attorney alleges bias against himself and his client based on the ALJ's statement.  The court denies plaintiff's request that the court order that another ALJ be assigned for the following reasons.  First, there were no consequences to plaintiff or his attorney, as the ALJ did not enforce the five-day rule and plaintiff was able to update his record and obtain the medical evidence.  (Tr. 968-99.)  Second, ALJ Romeo was not the same ALJ who presided over the 2016 hearing, and there is no evidence in the record of bias of ALJ Romeo, such as refusing to admit or consider plaintiff's evidence or testimony. Plaintiff was also free to cross-examine and question the medical and vocation experts who testified at the hearing.

The court's review of the record does not reveal the type of special occurrence which gives rise to the kinds of serious concerns about the fundamental fairness of the disability review process that this court has held is necessary for remand to a new ALJ.  As a result, plaintiff's request for remand to a new ALJ is denied.

**[This space intentionally left blank.]**

<u>**CONCLUSION**</u>

Federal regulations explicitly authorize a court, when reviewing decisions of the SSA, to order remand for further proceedings when appropriate.  "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  Remand is warranted where "there are gaps in the administrative record or the ALJ has applied an improper legal standard."  *Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999) (quoting *Pratts v. Charter*, 94 F.3d 34, 39 (2d Cir. 1996) (internal quotation marks omitted).  Remand is particularly appropriate where further findings or explanation will clarify the rationale for the ALJ's decision.  *Pratts*, 94 F.3d at 39.

For the reasons set forth above, the court grants plaintiff's motion for judgment on the pleadings; denies defendant's cross-motion for judgment on the pleadings; and remands this case for further proceedings consistent with this Memorandum and Order.  The Clerk of Court is respectfully directed to close this case and enter judgment in favor of plaintiff.

**SO ORDERED.**

Dated:      March 4, 2021
            Brooklyn, New York

                                        /s/
                            _____
                            **HON. KIYO A. MATSUMOTO**
                            United States District Judge
                            Eastern District of New York